## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRACYE GARRETT-HERNDON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:21-cv-1204 |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| | ) **Amended Complaint** |
| Defendant. | ) |
| | ) |
| | ) |

## <u>AMENDED COMPLAINT</u>

Plaintiff, Tracye Garrett-Herndon, by and through undersigned counsel, hereby submits this Amended Complaint against the named Defendant for the causes of action stated as follows:

## <u>INTRODUCTION</u>

1. Plaintiff Tracye Garrett-Herndon ("Plaintiff" or "Dr. Garrett-Herndon") brings this civil action pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*; Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq.*; and Title V, Section 503 of the ADA, 42 U.S.C. § 12203, for relief from discrimination and a hostile work environment based on Age (Sixty (60) years old; March 13, 1961), Disability (Physical: Fibromyalgia), and retaliation for engaging in a protected activity (prior EEO activity).

2. The District of Columbia ("Defendant") discriminated against Plaintiff on the basis of her Age (Sixty (60) years old; March 13, 1961), Disability (Physical: Fibromyalgia) and subjected her to a hostile work environment and retaliation for engaging

in a protected activity during the course of her employment with the District of Columbia Department of Corrections ("DOC" or "the Agency").

## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to Title I of the ADA, as amended, 42 U.S.C. §§ 12117.  Further, this Court has jurisdiction over this Complaint because a question of federal law is presented. 28 U.S.C. §§ 1331.

4.  Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 because Defendant's headquarters are located in the District of Columbia and a substantial part of the acts and omissions that give rise to this Complaint occurred within the District of Columbia.

## PARTIES

5.  Plaintiff is currently domiciled at 5126 12th Street, NE, Washington, DC 20011. At all relevant times, Plaintiff was an employee of the District of Columbia Department of Corrections.  Plaintiff is a resident of the District of Columbia and a United States citizen.

6.  Defendant, the District of Columbia operates the DC Department of Corrections ("DOC" or "the Agency"), an agency of the District of Columbia government responsible for the adult jails and other adult correctional institutions for the District of Columbia. Defendant's headquarters is located at 2000 14th Street, NW, Seventh Floor, Washington, DC 20009. The Defendant is responsible for the policies and practices of the DOC.

7.  Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts

and/or omission against Plaintiff within the course and scope of her employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8.  Plaintiff has exhausted all of her administrative remedies.

9. On January 25, 2018, Plaintiff filed a Charge of Discrimination based on Disability and Retaliation for engaging in a protected activity with the Equal Employment Opportunity Commission (EEOC) for the adverse employment actions alleged herein.

10.     On September 5, 2018, Plaintiff was issued an Exit Letter and Notice of Right to File a Formal Complaint with the District of Columbia Office of Human Rights within fifteen (15) days of the date of the Exit Letter.

11.     On September 20, 2018, Plaintiff timely filed a Formal Complaint with the District of Columbia Office of Human Rights.

12.     On November 21, 2018, Plaintiff filed a Continuing Action Charge of Discrimination based on Age, Disability and Retaliation.

13.     On February 02, 2021, the EEOC terminated the processing of Plaintiff's Charge of Discrimination, as more that 180 days had passed since its filing, and issued Plaintiff a Notice of Right to Sue, which provided Plaintiff ninety (90) days from receipt of that Notice to file a complaint in an appropriate United States District Court.

14.     Pursuant to that Notice, Plaintiff timely filed her Complaint on May 3, 2021.

## FACTS

15.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

16.     On December 17, 2012, Plaintiff was hired as a Correctional Treatment Specialist, Correctional Treatment Facility, Residential Substance Abuse Treatment Program (RSAT), Department of Corrections, Government of the District of Columbia, in Washington, DC.

17.     During the relevant time period, Plaintiff's direct supervisors were Catherine Voss, RSAT Program Manager (Disability Unknown) (November 2014 to October 2018),  Camille Williams, Deputy Director for Programs and Case Management, (Disability Unknown) (November 2018 to January 2019), Kizzie McKay, Program Administrator, (Disability Unknown) (July 1, 2019 to August 17, 2020), Veronica Brown, Lead Correctional Treatment Specialist, (Disability Unknown) (October 25, 2019 to present), and Syncia Sabain, Chief of Treatment and Community Services,  (Disability Unknown) (January 25, 2019 to present).

18.     In 2015, Plaintiff was diagnosed with Fibromyalgia, a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Fibromyalgia is believed to amplify painful sensations by affecting the way an individual's brain and spinal cord processes painful and nonpainful signals. Plaintiff also suffers from cervical and lumbar spine, and radicular pain syndrome.

19.     In or around February 22, 2016, Plaintiff informed Ms. Voss, Deborah Miller, Correctional Program Specialist, and Dr. LaToya Lane, Deputy Director for Programs and Case Management, of her diagnosis and provided them with supporting medical documentation.

20.     On March 3, 2016, Plaintiff submitted a Reasonable Accommodation (RA) request to Rosetta Taylor-Jones, ADA Coordinator, for assistive technology devices such

as a mobile screen for typewriting, a dictation machine to assist in her note taking, and an orthotic office chair to alleviate her spinal pain. Plaintiff did not receive any of the requested accommodations.

21.     On September 21, 2016, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and Defendant's failure to provide her a Reasonable Accommodation with the District of Columbia Department of Consumer and Regulatory Affairs (DCRA). On October 18, 2016, DCRA closed their review of Plaintiff's claims and issued an Exit Letter and Notice of Right to File a Formal Complaint with the District of Columbia Office of Human Rights (DCOHR).

22.     On September 23, 2016, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, and retaliation with Defendant's Office of EEO & Diversity. On January 12, 2017, Plaintiff received an Exit Letter and Notice of Right to File a Formal Complaint from Defendant's Office of EEO & Diversity, dated October 18, 2016, dismissing her September 23, 2016 complaint. Due to her untimely receipt of the Exit Letter, Plaintiff was unable to exercise her right to seek further review of her claims by filing a Formal Complaint with DCOHR.

23.     On November 7, 2016, Plaintiff met with Ms. Voss to discuss how they could amicably work together moving forward since Plaintiff's internal EEO complaint was dismissed.  However, shortly after Plaintiff arrived at Ms. Voss's office, Ms. Voss began to aggressively question Plaintiff about her reasons for filing a discrimination complaint. Plaintiff attempted to explain to Ms. Voss that she believed that she was being discriminated against based on her disability and that she feared that management

5

continuing to ignore her RA request would continue to negatively affect her health. Plaintiff also expressed to Ms. Voss that she had similar concerns surrounding her health in the past and management made no effort to address her issues, if at all, until after a formal complaint was filed, and even then, her concerns were consistently minimized or dismissed. Ms. Voss appeared to be annoyed that Plaintiff would not go into detail about each incident of discrimination, and that Plaintiff would not change her perspective on how important it was for Defendant to address her health and safety concerns. Ms. Voss then asked Plaintiff whether she was going to move to a different department because it would not be feasible for them to work together going forward due to Ms. Voss' lack of trust in whether Plaintiff would continue to file discrimination complaints if the discriminatory acts against her did not stop.  Plaintiff informed Ms. Voss that she would continue to report discriminatory practices if they were not addressed or resolved and asked to end the meeting as nothing was being accomplished. Ms. Voss agreed but stated that she planned to seek changes immediately, and she would be informing Human Resources that she would not be able to work with Plaintiff going forward.

24.     On November 22, 2016, Jacqueline Johnson, Management Liaison Specialist, informed Plaintiff via email that there were no available positions for her to transfer to.

25.     On February 15, 2017, Ms. Voss submitted a Memorandum to Jacqueline Williams, Program Administrator, requesting that Defendant reconsider their decision regarding Plaintiff's transfer options, and suggested that Plaintiff be transferred to another agency or within the DOC to facilitate substance use treatment groups on other housing units.

26.     On February 16, 2017, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and Defendant's failure to provide her a Reasonable Accommodation with DCRA. On March 10, 2017, DCRA closed their review of Plaintiff's complaint and issued an Exit Letter and Notice of Right to File a Formal Complaint with DCOHR.

27.     In late February 2017, the head of the IT department told Plaintiff in front of other staff members that she was creating a major problem for them by requesting to move her office.

28.     On March 1, 2017, Plaintiff applied for a Supervisory Correction Specialist position with Defendant. Plaintiff interviewed for the position but was never informed that she was not selected. Plaintiff later learned that Vera Lightner (Disability Unknown) and Ms. Capucine Carrington (Disability Unknown) were selected for the position because Defendant claimed that they had both previously performed as a Supervisory Correctional Treatment Specialist while Plaintiff had not steadily acted in a managerial position since 2012, and did not have any recent managerial experience. However, Plaintiff had over 30 years of supervisory and management experience in the public and private sector, compared to Ms. Carrington who had only acted in the position of Supervisory Correctional Treatment Specialist for three (3) months in 2013 and on an as needed in the absence of a supervisor.

29.     On March 3, 2017, Plaintiff filed a complaint with DCOHR against Ms. Voss, Jacqueline Williams and Dr. Lane, for discrimination based on disability due to Defendant's failure to implement any of her requested Accommodations.

30.     On June 1, 2017, Plaintiff applied for a Deputy Director for Management Support position with Defendant. Plaintiff interviewed for the position with Quincy L. Booth, DOC Director, but was never informed that she was not selected. Plaintiff later learned that Gitana Stewart-Ponder (Disability Unknown) was selected for the position because Defendant claimed that she was very knowledgeable about the budget process and Plaintiff lacked understanding of the budget process. However, Plaintiff had over 30 years of Management experience, significant experience performing budget forecasting, and grant development/Management/Reporting to multi-level agencies. Moreover, during Plaintiff's interview with Mr. Booth, where she made a formal presentation on her experience and understanding of the role, Mr. Booth appeared bored and uninterested during the interview.

31.     On July 28, 2017, Plaintiff was passed over for the opportunity to attend DOC's annual RSAT conference. Ms. Voss was unable to attend the conference and was instructed by upper Management to offer the opportunity to attend the training to everyone in the department in order of seniority. The two most senior staff members, who'd attended the training in prior years, declined. As such, Plaintiff was the next most senior staff member that should have been offered the opportunity to attend.  However, instead of contacting Plaintiff who was next in line, another staff member with less seniority than Plaintiff was contacted and offered the opportunity to attend the training instead.

32.     On July 28, 2017, a Program Manager vacancy was announced in the DOC Mental Health Department and Plaintiff applied for the position. Plaintiff interviewed for the position but was never informed that she was not selected. Plaintiff later learned that Clinique Chapman (Disability Unknown) was selected for the position because Defendant

claimed Plaintiff's responses to the pre-screening interview questions were vague and lacked details. However, Plaintiff provided thorough responses to each question asked by the interview panel.

33.     On July 31, 2017, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and Defendant's failure to provide her a Reasonable Accommodation with Defendant's Office of EEO & Diversity. On September 26, 2017, Defendant's Office of EEO & Diversity closed their review of Plaintiff's claims and issued an Exit Letter and Notice of Right to File a Formal Complaint with the DCOHR.

34.     On September 20, 2017, Plaintiff submitted an updated request to Ms. Taylor-Jones that included reassignment to a workspace that did not require her to climb stairs for access. As of the date of her updated RA request, Plaintiff had yet to receive the mobile screen, dictation machine, or orthotic office chair that was included in her initial RA request.

35.     On October 3, 2017, Plaintiff filed a Formal Complaint with DCOHR. On February 7, 2018, DCOHR confirmed their receipt of this complaint and informed Plaintiff that mediation would be scheduled to facilitate resolution.

36.     On November 3, 2017, Plaintiff applied for an Education Program Administrator position with the District of Columbia Department of Education. Plaintiff was invited to interview for the position but was never informed that she was not selected. In mid-January 2018, Plaintiff learned she was not selected for the position when she was introduced to the individual who was selected as Education Program Administrator.

37.     On November 9, 2017, Plaintiff submitted an updated RA request because the Agency still hadn't implemented any of the requested accommodations in her two previous RA requests.

38.     In or around late November 2017, Plaintiff met with Ms. Voss, Ms. Williams and Benjamin Olubasausi, her Union Representative, to discuss her RA request. During this meeting, to address Plaintiff's workspace request, Ms. Williams suggested an office space in an isolated area outside of RSAT, which was located in a hallway that had previously been used to house the K-9s. However, Mr. Olubasausi stated that the location was unacceptable for safety and logistical reasons. However, in December 2017, while Plaintiff attended mandatory training, her office was moved to the former K-9 space without her knowledge and another employee was move into her office. The area was not cleaned, there was no desk, no chair, no computer and no telephone. When Plaintiff inquired with Mr. Olubasausi as to why her office was moved to this space when he initially found it unsuitable, he suggested to Plaintiff that she take leave to allow Defendant time to resolve her office situation. As such, Plaintiff was forced to use over 254 hours of leave from December 2017 through March 2018. Plaintiff attempted to follow-up with Defendant on her reassignment to a suitable office space on multiple occasions while on leave but never received a definitive answer from anyone. As Plaintiff neared the end of exhausting all of her leave, she submitted an application for short term disability coverage with Defendant. However, DOC denied Plaintiff's request claiming that all of the requested accommodations were in place for Plaintiff to return to work.

39.     On December 11, 2017, Plaintiff applied for an Education Administrator position with the District of Columbia Department of Education. Plaintiff participated in a

telephone interview for the position but was never informed that she was not selected. Plaintiff later learned that Clarence Humes (Disability Unknown) was selected for the position because Defendant claimed that he had direct work knowledge of and current experience in the position. However, Plaintiff served as a School Administrator/SPED Coordinator with the District of Columbia Public Schools for nine (9) years and has dual master's degrees in human services and special education.

40.     On January 25, 2018, Plaintiff filed a Charge of Discrimination on the bases of Disability and Retaliation for engaging in a protected activity with the Equal Employment Opportunity Commission (EEOC).

41.     On June 20, 2018, Plaintiff returned to work but none of the items requested in her RA had been provided as Defendant claimed in their denial of her short-term disability application.

42.     On July 2, 2018, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, failure to hire/promote/transfer, denial of leave and failure to accommodate with Defendant's Office of EEO & Diversity.

43.     On July 5, 2018, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, and Defendant's failure to provide her a Reasonable Accommodation with the District of Columbia Department of Forensic Sciences (DC DFS). On September 5, 2018, DC DFS closed their review of Plaintiff's claims and issued an Exit Letter and Notice of Right to File a Formal Complaint with DCOHR.

44.     In mid-July 2018, Defendant provided Plaintiff with an orthotic chair and a transcription machine, but the transcription machine did not work. Plaintiff was also still without a suitable office space.

45.     On August 9, 2018, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and failure to accommodate with Defendant's Office of EEO & Diversity.

46.     On August 21, 2018, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and failure to accommodate with Defendant's Office of EEO & Diversity.

47.     On September 24, 2018, Plaintiff submitted her Time and Attendance sheet to Kimberley Gilchrist, Timekeeper, for approval as she usually did.  For the first time, Ms. Gilchrist informed Plaintiff that a supervisor needed to approve her time slips, therefore Ms. Voss or Ms. Williams would need to provide their signature for approval. When Plaintiff approached Ms. Voss for approval, Ms. Voss demanded that Plaintiff provide her with explanations for administrative leave hours taken on September 18, 2018 and September 27, 2018, and to provide her with copies of each policy in the DCMR related to administrative leave. Plaintiff met with Ms. Voss and provided her with the reasons she took administrative leave on the aforementioned dates.  However, instead of approving and submitting Plaintiff's time slips on time, Ms. Voss submitted Plaintiff's time slips late, and took the leave from Plaintiff's sick and annual leave allowance. As a result, Plaintiff did not receive her paycheck on time.

48.     On October 3, 2018, Plaintiff filed an internal EEO complaint of discrimination based on retaliation with DC DFS. On November 2, 2018, DC DFS closed

their review of Plaintiff's claims and issued an Exit Letter and Notice of Right to File a Formal Complaint with DCOHR.

49.     On October 3, 2018, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and failure to accommodate with Defendant's Office of EEO & Diversity.

50.     On October 4, 2018, Plaintiff attended Mediation with DCOHR for her internal EEO complaints. When Plaintiff returned to work the next day, she found that Ms. Voss had moved half of her belongings to another unsuitable workspace. The office was in a noisy area, it was not self-contained like other RSAT staff offices (*i.e.,* Plaintiff had no access to a refrigerator, microwave, IT connection, or a copier), the restroom could only be accessed via stairs, and Plaintiff was not provided with a key to the office or the restroom. When Plaintiff asked Ms. Voss for the keys to the office, Ms. Voss directed Plaintiff to get a key from the officer.

51.     On November 21, 2018, Plaintiff filed a Charge of Discrimination on the bases of Age, Disability and Retaliation for engaging in a protected activity with the EEOC.

52.     On September 25, 2019, Plaintiff filed an internal EEO complaint of discrimination based on a hostile work environment, disability, retaliation, and Defendant's failure to provide her a Reasonable Accommodation with Defendant's Office of EEO & Diversity.

53.     In September 2019, Plaintiff submitted another RA request to Human Resources.  However, due to staff changes, Plaintiff had to resubmit her RA request in early February 2021 to Paula Johnson, Defendant's new ADA Coordinator. To date, Plaintiff has not been provided with the status of her RA request.

54.     On January 3, 2020, Plaintiff was issued a Notice of Proposed 10-day Suspension without pay for allegedly "Failing/Refusing to Follow Instructions".

55.     On February 3, 2020, Plaintiff was issued a 9-day Suspension without pay from February 10, 2020 through February 20, 2020.

56.     Plaintiff believes that her Age, Disability and prior protected activity were factors in each of Defendant's decisions.

57.     Upon information and belief, similarly situated employees of a different protected class are not subjected to the same foregoing harassment/hostile work environment and unlawful discrimination by management officials.

## CAUSES OF ACTION

### COUNT ONE
### Age Discrimination in Employment Act, as amended,
### 29 U.S.C. § 621, *et seq.*
### (Employment Discrimination on the Basis of Age)

58.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

59.     Plaintiff is Sixty (60) years old and, as such, is a member of a protected class.

60.     As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and harassing treatment in comparison to younger employees that Defendant employed.

61.     Defendant has subjected Plaintiff to adverse employment actions, including the adverse actions alleged herein, and otherwise deprived Plaintiff of her rights as enjoyed by her younger coworkers.

62.     Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in lost wages and all the associated benefits.

63.     The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were to ensure that the RSAT program remained in compliance with the Department of Behavioral Health regulations, are not legitimate and would be pretext for its discriminatory conduct.

64.     Defendant knew at all times during the events described throughout this Complaint that Plaintiff was at least forty (40) years old.

65.     Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her Age (Sixty (60) years old; DOB: March 13, 1961).

66.     Defendant has deprived Plaintiff of employment, workplace benefits and otherwise adversely affects her status as an employee because of her Age (Sixty (60) years old; March 13, 1961).

67.     Other employees, who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in their terms and conditions of employment.

68.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her Age (Sixty (60) years old; March 13, 1961).

69.     As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career

opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

70.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

71.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT TWO**
**Title I of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12111, et seq.**
**(Discrimination based on Disability)**

72.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

73.     Plaintiff suffers from Fibromyalgia, a disability that has been well-documented with the Defendant and, as such, is a member of a protected class.

74.     Plaintiff's medical condition substantially limits major life activities; namely her ability to see, walk, stand, sit, sleep, eat, climb stairs, work, care for herself, and perform manual tasks due to limited mobility in her right hand.

75.     Plaintiff's condition is permanent.

76.     Plaintiff was subjected to the materially adverse employment actions asserted herein. Any reason proffered would not be legitimate, and it would be pretext.

77.     Prior to the allegations herein being asserted, Defendant was aware that Plaintiff suffered from Fibromyalgia, cervical and lumbar spine, and radicular pain syndrome.

78.     As an employee of Defendant, Plaintiff was treated differently and subjected to different terms and conditions of employment due to her disability.

79.     Defendant intentionally discriminated against Plaintiff because of her disability.

80.     Defendant limited, segregated and classified Plaintiff in a way which deprived her of employment because of her disability.

81.     Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

82.     Plaintiff believes that she was subjected to the adverse employment actions alleged herein based on upon her disability.

83.     By failing to recognize Plaintiff's disability, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

84.     Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

85.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT THREE**
**Title V, Section 503 of the of the of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12203**
**(Hostile Work Environment)**

86.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

87.    As a result of Plaintiff's protected status, Plaintiff's supervisors routinely engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

88.    Plaintiff was regularly and continually subjected to harassing conduct that included Defendant's failure to implement her requests for a Reasonable Accommodation (RA) since 2016, which created a hostile and abusive work environment.

89.    Defendant's continuous failure to provide Plaintiff with the requested accommodations recommended by her treating physician created a hostile and abusive work environment.

90.    Plaintiff believes that she was subjected to a hostile work environment because of her Disability (Fibromyalgia) and her prior EEO complaints.

91.    Defendant's unlawful conduct was unwelcome.

92.    Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

93.    Plaintiff was subjected to harassment because of her protected status, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

94.    Defendant knew or should have known that its failure to act created a hostile work environment for Plaintiff. Defendant failed to adequately accommodate Plaintiff's Disability and took no effective, immediate or remedial action.   Despite Plaintiff's numerous EEO complaints, she is still being required to report for duty without implementation of the RA requests.

95.     By failing to recognize Plaintiff's Disability, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

96.     As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

97.      Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Defendant's treatment and actions are ongoing.

98.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## COUNT FOUR
**Title V, Section 503 of the of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12203**
**(Employment Discrimination on the Basis of Engaging in Protected Activity)**

99.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

100.    When Plaintiff filed her first EEO complaint against Defendant, Ms. Voss repeatedly shared, in writing and in person with management, staff members and guests, her discontent with being forced to continue to work with Plaintiff because of her EEO complaints.

101.    Plaintiff believed that she has been overlooked for promotions, transfers, and other interdepartmental benefits because she has filed complaints of discrimination against Defendant and its employees.

102.    Plaintiff believes that her nonselection to the positions of Supervisory Correction Specialist, Deputy Director for Management Support, Program Manager, Education Administrator, and Education Program Administrator were in retaliation for the EEO complaints she filed as a result of management ignoring her repeated RA requests.

103.    Ms. Williams and Ms. Miller conducted the interviews for the Supervisory Correction Specialist position and had knowledge of Plaintiff's disability and internal EEO complaints prior to her nonselection for the position.

104.    Mr. Booth conducted the interviews for the Deputy Director for Management Support position and had knowledge of Plaintiff's disability and internal EEO complaints prior to her nonselection for the position because he has been copied on memorandums regarding Plaintiff's disability and on her complaints.

105.    Dr. Lane conducted the interviews for the Program Manager position and had knowledge of Plaintiff's disability and internal EEO complaints prior to her nonselection for the position because Dr. Lane has been identified as a responsible management official in several complaints.

106.    Plaintiff believes that her office being moved to Defendant's former K-9 space, not being offered the opportunity to attend the RSAT conference, as well as the February 3, 2020 9-day Suspension were in retaliation for the EEO complaints she filed as a result of management ignoring her repeated RA requests.

107.    In retaliation for Plaintiff's EEO complaints, Defendant subjected her to

adverse employment actions, including a 9-day Suspension without pay, non-selection to the Supervisory Correction Specialist position, the Deputy Director for Management Support position, the Program Manager position, the Education Administrator position, the Education Program Administrator position, and otherwise deprived Plaintiff of the same rights enjoyed by similarly situated employees who had not participated in EEO protected activity.

108.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of income, promotional opportunities and other disadvantages in the workplace.

109.    Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to engaging in protected activity.

110.    Defendant has limited, segregated and classified Plaintiff in a way that deprives her of employment opportunities and otherwise adversely affects her status as an employee because of her engaging in protected activity.

111.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her engaging in protected activity.

112.    Plaintiff has incurred lost wages, loss of reputation and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a.  Award compensatory damages as permitted by statute;

b. Award lost wages (back pay / front pay) with interest;

c. Award reasonable attorney fees, costs, and expenses incurred for this action;

d. Order Defendant to rescind the Notice of Proposed 10-day Suspension issued to Plaintiff on January 3, 2020, and the Notice of 9-day Suspension issued to Plaintiff on February 3, 2020;

e. Award equitable, declaratory, and injunctive relief; and

f. Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

113. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

114. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order Defendant to institute a policy and procedure to be implemented against discrimination;

b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c. Supervisory training for the supervisors at issue herein; and

d. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

115. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*A Marques Pitre, Esq.*

By:
_____
A. MARQUES PITRE, Partner
Pitre & Associates, LLC
Ronald Reagan Building and
International Trade Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby CERTIFY that on this 22nd day of September 2021, the foregoing *Amended Complaint* was served via United States Mail, along with a copy of the summons in the above captioned case, postage prepaid, return receipt requested, restricted delivery to the following:

THE HONORABLE MURIEL BOWSER
Mayor of District of Columbia
John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, D.C. 20004

KARL A. RACINE
Attorney General for the District of Columbia
Office of the Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001

Respectfully submitted,

*A Marques Pitre, Esq.*

_____
A.  MARQUES PITRE, Esq.