UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRACYE GARRETT-HERNDON, ) <br> Plaintiff, ) <br> v. ) <br> DISTRICT OF COLUMBIA, ) <br> Defendant. ) | Case No. 21-cv-01204 (APM) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Dr. Tracye Garrett-Herndon is a former employee of the District of Columbia Department Corrections ("DOC"). She worked as a Corrections Treatment Specialist starting in 2012, and her job responsibilities included providing individual and group sessions, as well as case management services to residents assigned or housed at the Correctional Treatment Facility. At the time Plaintiff filed this lawsuit, she was 60 years of age and had a chronic condition known as fibromyalgia.

Plaintiff commenced this action seeking relief from purported discrimination and a hostile work environment based on her age and disability, as well as retaliation and a retaliatory hostile work environment for engaging in protected activity. Her complaint contains the following counts: (1) discrimination on the basis of age under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*; (2) discrimination on the basis of disability under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.*; (3) hostile work environment in violation of Title V, Section 503 of the ADA, 42 U.S.C. § 12203; and (4) retaliation and retaliatory hostile

work environment in violation of Title V, Section 503 of the ADA, 42 U.S.C. § 12203. Am. Compl., ECF No. 13.

Plaintiff filed suit on May 3, 2021. *See* Compl., ECF No. 1. The only named defendants filed a motion to dismiss on August 20, 2021. *See* Defs. Director Quincy Booth & Dist. of Columbia Dep't of Corrections' Mot. to Dismiss, ECF No. 8. The court granted the motion via minute order because the individual defendant faced no individual liability under either statute and the DOC is a *non sui juris* entity that cannot be sued. Minute Order, Sept. 14, 2021. However, the court declined to dismiss the matter altogether and allowed Plaintiff to file an amended complaint. *Id*. She did so on September 22, 2021, naming the District of Columbia as the defendant. *See* Am. Compl.

On February 29, 2024, the District of Columbia moved for summary judgment. *See* Def. Dist. of Columbia's Mot. for Summ. J, ECF No. 49 [hereinafter Def.'s Mot.], Mem. of P. & A. in Supp. of Def's Mot., ECF No. 49-1 [hereinafter Def.'s Mem.]. Plaintiff opposed. Pl.'s Mem. in Opp'n to Def.'s Mot., ECF No. 54 [hereinafter Pl.'s Opp'n]. Once briefing was complete, the court granted Defendant permission to late file its required statement of undisputed material facts. Minute Order, July 7, 2024. Defendant submitted its filing on the same day. Def. Dist. of Columbia's Stmt. of Undisputed Material Facts, ECF No. 57 [hereinafter DSOF]. Plaintiff filed her response along with attached exhibits. Pl.'s Stmt. of Genuine Issues in Supp. of Pl.'s Opp'n, ECF No. 61 [hereinafter Pl.'s Responsive SOF]; Pl.'s Exs. to Pl.'s Responsive SOF, ECF No. 60 [hereinafter Pl.'s Exs.]. Finally, on January 16, 2025, Defendant filed a surreply. Def.'s Sur-reply in Supp. of Def.'s Mot., ECF No. 63 [hereinafter Def.'s Surreply].

For the reasons explained below, Defendant's motion for summary judgment is granted.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party; a fact is "material" only if it can affect the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Id.* at 255. To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" such that a reasonable jury could find in its favor. *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (first citing Fed. R. Civ. P. 56(e); then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.   DISCUSSION[1]

### A.   ADEA Claim

The ADEA requires employees to exhaust administrative remedies before initiating suit in federal court by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. § 626(d)(1); *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). Ordinarily a plaintiff must file the charge of discrimination within 180 days of the alleged unlawful practice. 29 U.S.C. § 626(d)(1). However, where, as here, the complainant has instituted proceedings with a state or local agency, the limitations period is

---

[1] The court foregoes a detailed recitation of the facts and incorporates them as necessary in its analysis.

3

extended to 300 days. *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016) (citing cases).

The equal employment opportunity ("EEO") charge must alert the employer of "the nature of the alleged wrongdoing." *Maryland v. Sodexho, Inc.*, 474 F. Supp. 2d 160, 162 (D.D.C. 2007). A lawsuit that follows the EEO charge is limited in scope to claims that are "like or reasonably related" to the allegations in the charge and grow out of such allegations. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). "At a minimum," the claim "must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id*. (citation omitted). And, although the exhaustion requirement is not meant to place a "heavy technical burden" on an employee, the requirement of "some specificity" in the charge is not a "mere technicality." *Id*. (internal quotation marks and citation omitted). In short, "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997).

Plaintiff claims that she exhausted her administrative remedies, pointing to her January 25, 2018 Charge of Discrimination filed with the District of Columbia Office of Human Rights. Def.'s Mot., 01/25/2018 EEOC Charge of Discrimination, ECF No. 49-6 [hereinafter EEO Charge]. However, her January 25 EEO charge was based solely on retaliation and disability, not on age. *Id*. Plaintiff admits that this EEO charge does not make an age-based claim. Pl.'s Responsive SOF ¶ 33. "Without some indication in the EEOC charge of a claim based on [age] occurring while [s]he was employed, [Plaintiff] cannot proceed here on such claims." *Sodexho*, 474 F. Supp. 2d at 162 (collecting cases).

Plaintiff purportedly filed an additional Charge of Discrimination on November 21, 2018, listing age discrimination as a basis for her grievances, but she did not produce this document in

4

discovery. Pl.'s Responsive SOF ¶¶ 41–42. For that reason alone, the court disregards this additional claimed Charge. But even assuming the existence of the November 21 EEO filing, it came too late as Plaintiff did not file it within 300 days after the alleged acts of discrimination. All claims prior to January 2018 are time-barred, including the alleged age discrimination she faced when she was passed over for four different positions in 2017. Pl.'s Responsive SOF ¶ 38. Plaintiff also appears to argue that on July 28, 2017, she was denied the opportunity to attend DOC's annual RSAT conference because of her age. *Id*. ¶ 37; *see also* Am. Compl. ¶¶ 31, 63. She has failed to exhaust that claim, too, and it is time barred.

### B. Failure to Accommodate

The ADA prohibits discrimination based on disability, which includes the failure to make "reasonable accommodation[s] to the known . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1300 (D.C. Cir. 1998) (quoting 42 U.S.C. § 12112(b)(5)(A)). The term "qualified individual with a disability" is defined as someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. (quoting 42 U.S.C. § 12111(8)).

"To withstand summary judgment" on a failure-to-accommodate claim, a plaintiff must adduce "sufficient evidence to allow a reasonable jury to conclude that (i) she was disabled within the meaning of the [ADA]; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Doak v. Johnson*,

798 F.3d 1096, 1105 (D.C. Cir. 2015). The only issue in dispute in this case is whether Defendant denied Plaintiff's request for a reasonable accommodation.

As an initial matter, "plaintiffs suing under the ADA in federal court 'must exhaust their administrative remedies by filing an EEOC charge and giving [the relevant] agency a chance to act on it.'" *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 78 (D.D.C. 2021) (quoting *Marshall*, 130 F. 3d at 1098). Defendant argues that Plaintiff's failure-to-accommodate claim is time barred because the time between when she requested her accommodation and filed her internal EEO Complaint was over 300 days. Def.'s Mem. at 10–11; Pl.'s Responsive SOF ¶ 26; *Cooper*, 174 F. Supp. 3d at 202 & n.4 (D.D.C. 2016). Defendant, however, misconstrues the applicable moment when the clock starts to run, which is the moment when a "discrete adverse employment action" occurs. *Rand v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). This means the exhaustion requirement is triggered when the employer acts, not upon the employee's request. For example, the denial of Plaintiff's accommodation request would constitute a "discrete act." *Id.* (citing cases). The record is not clear as to the timing of when the statutory exhaustion requirement was triggered in this case, so the court assumes without deciding that Plaintiff's failure-to-accommodate claim is not time barred.

"'To create an issue for the jury,' [a] plaintiff must point to 'sufficient evidence' in the record showing that they requested an accommodation and 'that, after the request, [defendant] refused to make an accommodation.'" *Cong. v. Gruenberg*, 643 F. Supp. 3d 203, 221 (D.D.C. 2022) (alterations in original) (quoting *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308 (D.C. Cir. 2010)). The D.C. Circuit has explained that "[a]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some

reasonable accommodation." *Aka,* 156 F.3d at 1305 (alteration in original) (quoting *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996)). Though the record is muddled, what is clear is that Plaintiff fails to meet her burden.

In her January 2018 EEO Charge, Plaintiff wrote that she requested the following accommodations: "a mobile screen for typewriting, dictation machine to assist [her] notes taking, and comfortable chair to ease the pain of [her] spine, and transfer . . . to allocation [sic] where [she did] not have to use steps." EEO Charge. Plaintiff's employer substantially granted each of these requests. For example, Plaintiff was moved to a lower floor, which largely eliminated the need to use stairs, though she now claims this was not a suitable arrangement because high temperatures in the area affected her respiratory issues. Pl.'s Responsive SOF ¶¶ 11–12. She again asked for an office move, and the DOC accommodated her by placing her on Level 74 of the Correctional Treatment Facility. *Id*. ¶¶ 13, 16, 17. Plaintiff took issue with the fact that this new office was in the "sally port, which is in the middle of the hallway between two male housing units" and used to house K-9s. *Id.* ¶¶ 18–19. But there were no dogs present at the time of Plaintiff's assignment, and others worked there, too. *Id*. ¶¶ 19–20, 22. Plus, the space included two bathrooms, two offices, a conference room, two storage areas, and a kitchen. *Id*. ¶ 21. Although Plaintiff may not have received exactly the accommodation she wanted, nothing in the record suggests that the accommodations made were not reasonable. *Woodruff v. LaHood*, 777 F. Supp. 2d 33, 43 (D.D.C. 2011) ("[A]n employer need not offer the particular accommodation preferred by the employee so long as a reasonable alternative is provided.").

As to her other requests: DOC provided Plaintiff an orthotic chair, Pl.'s Responsive SOF ¶ 24; a mobile screen that moved up and down, *id*. ¶ 39; and a dictation machine, though she

ultimately returned it because she felt it did not work as she needed, *id*. ¶ 40.[2]  On this record, the Defendant "did make reasonable accommodations, which is all the law requires it to do." *Doak v. Johnson*, 19 F. Supp. 3d 259, 275 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015).

### C. Retaliation Claim

To make out a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) [s]he engaged in protected activity; (2) [s]he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks omitted).  Filing a complaint of discrimination, as Plaintiff did here, plainly constitutes protected activity. *See Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). With respect to the adversity requirement, "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  And, finally, a causal link between a protected activity and the subsequent adverse employment action must "be prove[n] according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

---

[2] Although Plaintiff asserts that the transcription machine she received was "inoperable," Pl.'s Responsive Stmt. ¶ 40, that was not her deposition testimony.  She testified that the machine did not fit her needs, so she returned it. Def.'s Mot., Dep. of Tracye Garrett-Herndon, ECF No. 49-3, at 150:1–155:5.  After doing so, she did not ask for a different machine. *Id.* at 155:6-15.

Plaintiff fails to establish a prima facie case because she adduces no evidence linking her protected activity to an adverse action. Plaintiff alleges that DOC had passed her over for promotions in retaliation for protected conduct. Am. Compl. ¶¶ 101, 108; *see also* EEO Charge. But Plaintiff offers no evidence of her superior qualifications over an actual selectee that would support an inference that her non-selection was due to retaliation. *See Hamilton*, 666 F.3d at 1352 ("[A] disparity in qualifications, standing alone, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination'—that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). Her opposition brief does little more than paste announcements of new hires and their qualifications; she makes no effort to show how she was "markedly more qualified" than these individuals. *See id.*; Pl.'s Opp'n at 14–18. Additionally, her testimony suggests other, non-retaliatory motivations behind the hiring decisions. Pl.'s Responsive SOF ¶ 48 (agreeing that at least one of the positions was awarded to someone else in part due to "cronyism").

Plaintiff also alleges that she was retaliated against by being denied the opportunity to attend an RSAT conference. Am. Compl. ¶ 106; EEO Charge. As an initial matter, it is not clear that such an allegation rises to the level of a *material* adverse employment action. *Chambers v. District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (only a retaliatory act that is "materially adverse" to the plaintiff is actionable); *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) ("Typically, a materially adverse action in the workplace involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." (internal quotation marks and citations omitted)). Even if it did, Plaintiff fails to show that the denial of this

9

opportunity was connected to her protected activity. Plaintiff's own testimony suggests "nepotism and favoritism" was the actual reason another employee was selected over her for the training. Pl.'s Dep. at 175:5-17. Plaintiff appears to deny this testimony in part by citing to her EEO Charge, but she does not specify what portion of her testimony she is now refuting and nothing in the EEO Charge contradicts her testimony. *See* Pl.'s Responsive SOF ¶ 28.

Plaintiff also alleges that DOC proposed a retaliatory 10-day suspension in or around January 2020. Am. Compl. ¶ 106; Pl.'s Opp'n at 2–3. She attaches a letter dated February 3, 2020, to support this allegation. Pl.'s Exs. at 83–84. Defendant argues that the two-year delay between the proposed suspension and the January 2018 EEO charge attenuates any causal connection between the two events. Def.'s Reply at 7. The court agrees. The time elapsed between the proposed suspension and Plaintiff's January 2018 EEO Charge is far too long to infer any causal connection between the two events. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."); *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all"). Plaintiff has thus failed to establish causation for any of the alleged instances of retaliation, so Defendant is entitled to summary judgment on this claim.

### D. Hostile Work Environment

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

10

conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Because the Supreme Court has held that similar language in Title VII establishes a cause of action for hostile work environment harassment, courts of appeals have held that a hostile work environment claim is also cognizable under the ADA.  *See, e.g.*, *Lanman v. Johnson Cnty.*, 393 F.3d 1151, 1155–56 (10th Cir. 2004); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719–20 (8th Cir. 2003); *Flowers v. Se. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 232–35 (5th Cir. 2001); *cf. Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 236 (D.C. Cir. 2018) (assuming without deciding that a hostile work environment claim is available under the ADA).  "To prevail on a hostile-work-environment claim, a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Hill*, 897 F.3d at 237 (internal quotation marks and citations omitted). The "conduct must be extreme to amount to a change in the terms and conditions of employment."  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  The components of a retaliatory hostile work environment claim, which the court presumes exists under the ADA, are similar.  *See Hussain v. Nicholson*, 435 F.3d 359, 366–67 (D.C. Cir. 2006) (discussing elements of retaliatory hostile work environment claim under Title VII).

To establish that the harassment "affected a term, condition, or privilege of employment," a plaintiff must show that her "workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013) (cleaned up).  Moreover, the offending conduct must satisfy both objective and subjective standards of hostility; that is, it must be "severe or pervasive

11

enough to create an objectively hostile or abusive work environment," and cause the "victim . . . subjectively [to] perceive the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (articulating test of Title VII hostile work environment); *accord Brown v. Snow*, 407 F. Supp. 2d 61, 69–70 (D.D.C. 2005) (applying *Harris* to an ADA hostile work environment claim). "[O]bjective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23), including "the frequency of the discriminatory [or retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 353 (D.D.C. 2013) (quoting *Harris*, 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted).

Plaintiff points to several episodes that she believes created a hostile work environment. Pl.'s Responsive SOF ¶¶ 50–62. The 2016 safety violations she points to were never raised in any EEO complaints and therefore are not timely exhausted. Pl.'s Responsive SOF ¶ 50; Def.'s Mem. at 16–17; *see Wilson v. Peña*, 79 F.3d 154, 164 (D.C. Cir. 1996) (suit will be "barred for failure to exhaust administrative remedies" where the plaintiff "fail[s] to provide sufficient information to enable the agency to investigate the claim").

Plaintiff also argues that her supervisor created a hostile work environment. For instance, she alleges that her supervisor became "hostile, guarded and dismissive" during a conversation with a "hostile, aggressive male client" and that she "left the room." Pl.'s Responsive SOF ¶¶ 51–

12

54. Nothing about this interaction appears "severe" or "pervasive" or "abusive" enough to constitute a hostile work environment, nor does it appear to have any connection to Plaintiff's disability or protected activity. *Henry v. Guest Services, Inc.*, 902 F. Supp. 245, 252 n. 9 (D.D.C. 1995); *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001). Plaintiff also claims that her supervisor was unable "to move past the complaints" she filed. Pl.'s Responsive SOF ¶ 59. This non-descript allegation, standing alone, does not establish hostility. Plaintiff does not explain how her supervisor's inability to "move past the complaints" manifested in action. Notably, she does not assert that she experienced any recognized adverse action, like a transfer, demotion, or assignment of lesser work responsibilities. Def.'s Mem. at 17.

None of Plaintiff's remaining claims, individually or collectively, rise to the level of a severe or pervasive hostile work environment. *See, e.g.*, Pl.'s Responsive SOF ¶ 55 (alleging that she was "the last person to receive a set of keys" to the suite of RSAT offices); Def.'s Mot., Pl.'s Answer to Interrogs. 12, 15, ECF No. 49-9, at 25 (alleging that when Plaintiff attempted to discuss safety concerns relating to two male clients who were assisting with paperwork, her supervisor became "hostile, guarded, and dismissive"). Plaintiff may have been the victim of the petty grievances that accompany many workplaces, but that is not enough to survive summary judgment on her hostile work environment claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("An employee . . . cannot [be] immunize[d] . . . from those petty slights or minor annoyances that often take place at work and that all employees experience.").

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, ECF No. 49.

A final, appealable Order accompanies this Memorandum Opinion.

Dated:  September 30, 2025

Amit P. Mehta
United States District Judge